UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>vs.<br><br>JOSEPH KENNETH HENRY,<br>Defendant | 4:21-cr-40106<br>4:22-cr-40018<br><br>MEMORANDUM OPINION AND<br>ORDER FINDING DEFENDANT<br>COMPETENT |

On June 26, 2024, the Court held a hearing to resolve identical issues in the two federal cases pending against Defendant. The primary issue before the Court is to determine whether Defendant currently suffers from a mental disease or defect as a result of which he is unable to understand the charges pending against him and to assist in his defense. The second issue is whether defense counsel is permitted to withdraw. For the reasons that follow, the Court finds Defendant is competent to understand the nature of the charges pending against him and to assist in his defense in both cases pending against him. The Court further finds the standard of "justifiable dissatisfaction" with Defense Counsel has not been met, and therefore denies the motion to withdraw.

**BACKGROUND**

1

In July 2021, Defendant was indicted for possession of a firearm by a prohibited person. 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2). (4:21-cr-40106). Several months later, while on furlough from pretrial detention to attend treatment, Defendant allegedly failed to return and was subsequently indicted for escape from custody. 18 U.S.C. § 751(a). (4:22-cr-40018). To avoid confusion in the two pending cases, the citations in this Order will be to 4:21-cr-40106 because that case has the majority of filings. Citations to 4:22-cr-40018 will be added where appropriate.

Defendant's initial counsel withdrew in March 2022 from 4:21-cr-40106, and Defendant's present counsel was appointed to represent him in both prosecutions. Two months after her appointment, Counsel moved for a competency examination, calling into question the Defendant's ability to understand the nature of the proceedings against him and to assist in his defense. (Doc. 57, 4:21-cr-40106; Doc. 20, 4:22-cr-40018). The magistrate Judge ordered a competency evaluation, (Doc. 61, 65), after which Counsel moved this Court for a hearing pursuant to 18 U.S.C. § 4241(d). At the hearing, the Court noted receipt of a forensic evaluation by Dr. Ryan Nybo, Psy.D., Federal Detention Center, SEATAC, which recommended hospitalization for competency restoration. (Doc. 72). Because Defendant refused to participate in several evaluation measures, determination of a possible mental illness was provisional. (Id., PgID 143).

Following the hearing, the Court found the Defendant incompetent to understand the nature of the proceedings and to assist in his defense. (Doc. 77). The Court ordered Defendant hospitalized pursuant to 18 U.S.C. § 4241(d) for a determination of competency and ordered that if the Director of the facility in which Defendant was hospitalized determined Defendant had recovered sufficiently to understand the nature of the proceedings and assist in his defense, that a certificate be filed with the Court. (Id.).

The certificate and a report having been filed with the Court, (Doc. 83), a hearing was held in accordance with 18 U.S.C. § 4241(e) to enable the Court to determine Defendant's competency to stand trial. Meanwhile, Defense Counsel filed a motion to withdraw, informing the Court that Defendant had requested her to do so. (Doc. 85). The Court addressed this issue at the commencement of the competency hearing.

## DISCUSSION

### 1. Motion to withdraw at Defendant's request

#### a. Legal Standard

In numerous cases, the Eighth Circuit has provided guidance on the standards for withdrawal of an attorney in a criminal case. In *United States v. Harlan*, the court stated, "Whether to grant a continuance and substitution of counsel is a matter committed to the sound discretion of the district court." 960

3

F.3d 1089, 1091 (8th Cir. 2020) (quoting *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992)). The court instructed that a defendant "who is dissatisfied with appointed counsel must show 'justifiable dissatisfaction' to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Id.* at 1092 (quoting *United States v. Jones*, 795 F.3d 791, 796 (8th Cir. 2015) (internal quotation marks omitted)).

The *Harlan* court continued with helpful guidance for balancing relevant factors. These include "the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job." *Id.* (quoting *United States v. Barrow*, 287 F.3d 733, 738 (8th Cir. 2002)). The court denied relief on appeal despite the defendant's having met with the attorney only once, the attorney's having mistakenly sent confidential paperwork to another inmate, and a paralegal's allegedly unprofessional conduct. *Id.*

In *United States v. Delacruz*, the court endeavored to determine whether there was "justifiable dissatisfaction" with the attorney's representation. 865 F.3d 1000, 1008 (8th Cir. 2017). The defendant apparently disagreed with counsel's approach to a sentencing issue, which the district court considered in denying the

motion to substitute counsel. The court said the "focus of the justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the accused's relationship with his attorney." *Id.* "Justifiable dissatisfaction" does not exist where there is disagreement about tactics, but counsel's representation is zealous. The court concluded that if the defendant refuses to speak with counsel the resulting lack of communication is not based on counsel's ineffectiveness and "the defendant's stonewalling does not entitle him to new counsel." *Id.* See also *United States v. Trevino*, 829 F.3d 668, 674 (8th Cir. 2016) (discussing justifiable dissatisfaction standard); *United States v. Taylor*, 652 F.3d 905, 908 (8th Cir. 2011) (same).

      b. Analysis

At the June 26, 2024, hearing, Defense Counsel addressed the issue of withdrawal. She explained to the Court that Defendant had asked her to withdraw prior to the first competency hearing and, again, a few days prior to the current hearing. She reported that he will not speak to her about the case and he requests that he be represented by a new attorney named Jeff Lawson.

The Deputy Clerk checked the records of the South Dakota Bar at that point in the hearing and confirmed that no attorney with that name is licensed in South Dakota. No additional attorney has filed an appearance in Defendant's cases. Defendant asserted that Jeff Lawson has "an international license to practice law,"

and the Court assured him there is no such thing. Defendant could not state the person's whereabouts, stated he had never spoken to him, and asserted he communicates with him through a "mind-leap." The Court confirmed with Defendant that the person has no address Defendant knows of, no phone number, and has not noticed an appearance in the case.

The Court advised Defendant that he needs to be represented by someone who is qualified to appear in court and will represent his interests. The Court reminded Defendant that his current Defense Counsel has been effective and has provided zealous representation. Defense Counsel assured the Court she would continue to advocate for Defendant and preserve his rights. Defendant asserted he was dissatisfied with counsel because she did not report that he had been "nano-raped" by technological means and because he wants protection of his Constitutional rights as he interprets them.

Having heard the presentations by Defense Counsel and Defendant, the Court asked whether Government Counsel had a position on the withdrawal motion, and she did not. The Court advised Defendant that stonewalling his attorney would not result in the appointment of new counsel. He reinforced that Defendant's refusal to speak to Counsel does not render the attorney's representation ineffective. He told Defendant that if a new attorney seeks to

represent him, the Court will address the issue at that time. The Court recommended to Defendant that he start cooperating with his attorney.

Having heard the comments from Defendant and Defense Counsel pertaining to the motion to withdraw, in addition to reviewing the files in Defendant's two cases, 4:21-cr-40106 and 4:22-cr-40018, the Court finds as follows:

1. Defendant has failed to present evidence of "justifiable dissatisfaction" with his Defense Counsel;

2. There is no conflict of interest or irreconcilable conflict between Defendant and Defense Counsel.

3. Any breakdown in communication between Defendant and his attorney was caused by Defendant's refusal to cooperate with Counsel's efforts to represent him. Defendant cannot create "justifiable dissatisfaction" based on a breakdown in communication by his own refusal to cooperate and cannot obtain new counsel by this conduct.

Therefore, the Court denies the motion to withdraw. (Doc. 85, 4:21-cr-40106; Doc. 47, 4:22-cr-40018).

### 2. Determination of Defendant's competency to stand trial

    a. Legal standard

As noted above, pursuant to 18 U.S.C. § 4241(d), the Court ordered that Defendant be committed for a determination of his ability to understand the nature of the proceedings against him and to assist counsel in his defense. (Doc. 77). Upon receipt of a certificate of competency submitted by F.J. Bowers, Warden of the Federal Medical Center, Devens, (Doc. 88, PgID 224), the Court conducted a hearing to determine Defendant's competency in accordance with 18 U.S.C. § 4241(e). The statute directs the court to determine by a preponderance whether the defendant is competent, and if so, the Court must order the defendant's discharge from the facility where he or she is hospitalized and shall set the date for trial. Id.

The Eighth Circuit has provided extensive guidance on how a district court must make the assessment required by § 4241, recognizing that it requires a "detailed and fact-intensive analysis" which will be reviewed for clear error. *United States v. Washington,* 968 F.3d 860, 864 (8th Cir. 2020). The decision regarding competency is "committed to the discretion of the district court." *United States v. Barraza,* 982 F.3d 1106, 1112 (8th Cir. 2020) (quoting *United States v. Contreras,* 816 F.3d 502, 514 (8th Cir. 2016)). The court is required to determine that "the defendant is competent at all stages of the prosecution" and has the "present ability to consult with his lawyer with a reasonable degree of rational understanding." *United States v. Dahl,* 807 F.3d 900, 904 (8th Cir. 2015). In addition, the defendant must have "a rational as well as factual understanding of

the proceedings against him." *Id.* The burden is on the defendant to demonstrate that he is not competent to stand trial. *United States v. Mueller*, 661 F.3d 338, 352 (8th Cir. 2011) (quoting *United States v. Denton*, 434 F.3d 1104, 1112 (8th Cir. 2006)).

In making its determination about the defendant's competency, the court may rely on the evidence at the hearing, including "expert medical opinions and the court's observations of defendant's demeanor." *United States v. Whittington*, 586 F.3d 613, 618 (8th Cir. 2009). The court may also rely on any witnesses called by the defense and any other evidence the defendant introduces pursuant to 18 U.S.C. § 4247(d).

The fact-intensive inquiry into competence is illustrated well by the difficult factual situation in *United States v. Barraza* which required the court on resentencing to determine the competency of a defendant convicted of murder as a juvenile and given a sentence of mandatory life without parole. 982 F.3d 1106 (8th Cir. 2020). The defendant's competency for resentencing was concerning to the court, which ordered a psychological examination. *Id.* at 1109. Experts offered conflicting reports on defendant's competency, and the court ordered commitment to the custody of the Attorney General pursuant to 18 U.S.C. § 4241. After a certificate of restoration of competency was issued, the court held a hearing and adopted the latest of the expert reports which substantiated the evidence of

competency, based in part on educational efforts and a positive institutional record. In addition to defendant's educational accomplishments, the court also considered his unintelligible filings with the court, and his identification with the sovereign citizens movement. The court found by a preponderance that defendant was competent, and the Eighth Circuit affirmed.

Similarly, in *Contreras*, the Court addressed the question of competence for sentencing in a prosecution for murder. 816 F.3d at 514. Based on an examination in a federal medical facility, Defendant was deemed to be "malingering" and insufficient data existed to determine he was incompetent. *Id.* The Court found defendant competent to proceed with sentencing based on the psychiatric report, the psychiatrist's testimony, and its observations. The Eighth Circuit affirmed. *Id.* Similarly, in *United States v. Casteel*, the court conducted a hearing pursuant to 18 U.S.C. §§ 4241 and 4247 and considered the reports and testimony of three experts who had examined defendant. 717 F.3d 635, 642 (8th Cir. 2013). The court concluded he was mentally ill but competent to stand trial, despite an earlier determination of incompetency which had been followed by a competency restoration. *Id.* The Eighth Circuit affirmed.

    b. Analysis

As noted above, the Court conducted a hearing pursuant to 18 U.S.C. §§ 4241 and 4247 on June 26, 2024. Present for the almost two-hour hearing were the

Defendant, Defense Counsel, and Government Counsel. Following the Court's denial from the bench of Defense Counsel's motion to withdraw, the Court addressed the matter of Defendant's competency. The Court referred to the Certificate of Competency and psychological report dated April 17, 2024, prepared by Dr. Miriam Kissin, Psy. D., the Forensic Psychologist who examined Defendant at FMC Devens. (Doc. 88, Exhibit 1). The report was entered into evidence in both cases pending against Defendant, along with the report from Dr. Nybo of SEATAC, (Doc 88, Court's Exhibit A). Neither party called witnesses or introduced other evidence. The Court engaged in discussions with Defendant on several topics.

The psychological report notes that Defendant makes claims to having "camera implants," "nano-rape," being royalty, and being God. (Doc. 83, PgID 240). Defendant repeated those notions at the hearing. Yet, Dr. Kissin's report states that Defendant has "functioned on an open mental health unit with no reported or observed interpersonal issues, incident reports, or adaptive concerns." (Id., PgID 238). He appropriately attended to "activities of daily living" including participating in recreation. (Id.). Defendant refused to participate in some of the psychological testing, which rendered the results invalid. (Id.). He stated some beliefs which were delusional. He used an atypical speech pattern with the forensic team and other clinical staff but not with peers and correctional staff.

11

(Id.). His consistently adaptive functioning indicated no "cognitive impairment." (Id., PgID 240).

The Kissin report notes that schizophrenia spectrum psychotic disorders normally appear in late adolescence to early adulthood, while Defendant's purported symptoms appeared in late adulthood while he was incarcerated for the instant charges. (Id., PgID 240). His history of substance use disorders "repeatedly undermined his adaptive functioning." (Id., PgID 241). The Primary Diagnosis after evaluation at FMC Devens was Malingering, with secondary diagnoses of substance abuse disorders. (Id.). Most telling is the evaluators' conclusion that "the onset, nature, and trajectory of Mr. Henry's observed psychiatric symptoms are inconsistent with a bona fide psychotic illness." (Id.) This is despite the evaluators' acknowledgement that Defendant had been diagnosed with Unspecified Schizophrenia and Other Psychotic Disorder in January 24, 2023, at SEATAC.

With respect to his understanding of the legal process, Defendant indicated to the examiners at FMC Devens that he understood he was charged with a firearm possession offense based on his being a felon; he understood he was charged with escape for leaving a halfway house; he understood the roles of prosecutor, defense counsel, and judge; he understood evidence would be introduced at trial; he understood he has Constitutional rights that will be protected; he understood a jury

would determine whether he is guilty or not guilty. (Id., PgID 243-45). As the Court noted at the hearing, numerous references in the psychological report underscore Defendant's understanding of the nature of the charges against him and his ability to assist his defense counsel.

The psychological report concludes "there is no known or reported symptoms of a chronic, persistent, or severe mental illness prior to his current pending charges." (Id., PgID 245). The report also concludes Defendant's odd speech patterns and unusual beliefs are "not consistent with a bona fide mental illness and are best explained by Malingering, potentially associated with motivation to avoid the consequences of his instant legal charges." (Id.). Further, the report concludes that Defendant "displayed a rational understanding of the charges against him." (Id., PgID 216). With respect to assisting counsel in his defense, the report states Defendant may be "resistant" to working with his attorney but there is "no indication he cannot form an effective working relationship" with an attorney he trusts. (Id.).

At the hearing, the Court repeated the questions pertaining to Defendant's understanding of the criminal process, including the nature of the charges against him, the role of the jury, what a finding of guilty or not guilty means, and the rights Defendant has at trial. The Defendant indicated he understood his rights and the process.

After reviewing the contents of the Kinnin report with Defendant, the Court invited him to speak if he cared to, although he was not required to do so. Defendant said there is a mind cap on him and he is robotically controlled because implants were inserted in him. He said his parents were deceased but he had brought them back to life and they reside in the area. The Court asked Defendant to explain "nano-rape," to which Defendant said this is rape by nanotechnology that controls his body. He said he is God and his grandparents were a king and queen. The Court encouraged Defendant to cooperate with his attorney, discussed trial procedures with him, explained proceeding pro se, and explained that jurors would have to be unanimous in finding guilt beyond a reasonable doubt. Defendant acknowledged understanding all of this information.

As the discussion between the Court and Defendant continued, Defendant confirmed he had earned a GED despite having left school as a teenager. Defendant asserted to the Court he thought the gun laws have been changed and the Court informed him any change did not apply to the charges pending against him. Defendant also said there was "no way" he would represent himself. The Court assured Defendant he would see that Defendant gets a fair trial.

At times, Defendant used gibberish in discussions. Often, however, the Defendant was able to quickly transfer the gibberish into coherent statements. Defendant has a habit of changing the syllables in words; for example, instead of

saying "understand" he says "stand under." Yet he included the transformed word in the proper place in a sentence and was consistently able to converse with normal speech, such as what he apparently used with other inmates while undergoing psychological evaluation at FMC Devens.

As was the case in *Barraza*, there are conflicting expert reports. The Court recognizes the SEATAC evaluation expressed doubts about Defendant's competency, but it is clear this was a preliminary report and Defendant's lack of cooperation played a significant role in preventing an accurate diagnosis.

The Court adopts the analysis and findings in Dr. Kissin's report, and based on the Court's review of the psychological report, (Doc. 88), the SEATAC report, (id., Court's Exhibit A), the comments of Counsel, the Defendant's statements, and the Court's observations of Defendant, the Court finds as follows by a preponderance of the evidence:

1. Defendant understands the nature and consequences of the proceedings against him,

2. Defendant can assist in his defense.

Therefore, the Court finds the Defendant is competent to stand trial in 4:21-cr-40106 and 4:22-cr-40018. A trial date will be scheduled as soon as possible.

Accordingly, IT IS ORDERED that

1. Defense counsel's motion to withdraw is denied, (Doc. 85, 4:21-cr-40106; Doc.

15

47, 4:22-cr-40018);

2. Defendant is determined to be competent and will stand trial in 4:21-cr-40106 and 4:22-cr-40018.

Dated this 16th day of July, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK